IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDIA CORPORATION,

        Petitioner,

vs.                                           Civ. No. 01-1415  MV/WDS

OFFICE AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION,
LOCAL 251, AFL-CIO,

        Respondent.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Motion to Vacate Arbitration

Award, filed July 15, 2002, **[Doc. No. 18]** and Respondent's Counterclaim to Confirm and

Enforce Arbitrator's Award, filed July 29, 2002, **[Doc. No. 20]**.  The Court, having considered

the motion, counterclaim, reply, relevant law, and being otherwise fully informed, finds that the

Motion to Vacate Arbitration Award is not well-taken and will be **DENIED** and the Counterclaim

to Confirm and Enforce Arbitrator's Award is well-taken and will be **GRANTED**.

### FACTUAL BACKGROUND

Petitioner Sandia Corporation ("Sandia") and Respondent Office and Professional

Employees International Union, Local 251, AFL-CIA ("Union") are parties to a collective

bargaining agreement ("CBA") which provides in pertinent part that Sandia may discharge or

discipline an employee only for "just cause."   The CBA does not define just cause.

Renee Urquidez ("Urquidez"), an employee in Sandia's Accounts Payable Department,

was a member of the collective bargaining unit represented by the Union.  On April 12, 2000, Connie Wenk ("Wenk"), the Accounts Payable Department Manager, placed Urquidez on an Action Plan for Improved performance ("APIP").  The APIP required Urquidez to meet weekly with Wenk to discuss her performance and weekly activities.

Pursuant to the CBA's grievance procedure, the Union filed a grievance on April 24, 2000, claiming that the APIP was discriminatory and demanding that Urquidez be removed from the APIP.  The grievance was denied and the Union never requested arbitration on the grievance.  On May 25, 2000, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging that the weekly meetings required by the APIP violated the National Labor Relations Act because they were conducted without Union representation.  The NLRB deferred determination of the unfair labor practice charge to the arbitration procedures available in the CBA.

On the morning of June 14, 2000, Wenk advised Urquidez that there would be a disciplinary meeting that afternoon and that Urquidez may want to secure Union representation. At the established meeting time, Urquidez arrived and requested that the meeting be postponed because the Union representative had been delayed.  This request was denied.  At the meeting, Wenk placed Urquidez on 24-hour decision-making leave with pay and requested that Urquidez use this time to decide if she wished to continue her employment and, if she did, to write an action plan detailing how she intended to improve her performance.

Pursuant to the CBA's grievance procedure, the Union filed a grievance regarding the June 14, 2000 disciplinary meeting.  The grievance was never taken to arbitration.  On June 27, 2000, the Union filed an unfair labor practice charge with the NLRB alleging that the

June 14, 2000 meeting violated the National Labor Relations Act because discipline was imposed

without a Union representative present.  The NLRB deferred determination of the unfair labor

practice charge to the arbitration procedures available in the CBA.

On September 18, 2000, the Union filed an unfair labor practice charge with the NLRB

alleging that Wenk's use of card swipes to establish Urquidez's attendance and tardy records

violated the National Labor Relations Act.  The NLRB deferred determination of the unfair labor

practice charge to the arbitration procedures available in the CBA.  The Union filed a grievance

pursuant to the CBA, which was never taken to arbitration.

Wenk terminated Urquidez's employment effective August 1, 2000, as a "result of

unacceptable performance and unsatisfactory progress in meeting the terms of your Action Plan

for Improved Performance."  On August 10, 2000, the Union filed a grievance pursuant to the

terms of the CBA protesting Urquidez's discharge as being "unfair, unjust and too severe."  This

grievance was properly processed in accordance with the terms of the CBA and was submitted to

a neutral arbitrator for determination.  The parties stipulated to resolution of the following issue

by the arbitrator:

> Was the Grievant, Renee Urquidez, terminated for just cause pursuant to the
> provisions of the Labor Agreement?  If not, what is the appropriate remedy?

Following a hearing, the arbitrator issued a written decision on November 30, 2001,

sustaining the grievance in part and denying the grievance in part.  As a remedy, the arbitrator

reinstated Urquidez without back pay.  On December 18, 2001, Sandia filed the instant petition to

vacate the arbitration award on the grounds that the arbitrator exceeded his jurisdiction by first

finding just cause for the termination and then considering issues not properly before him to

mitigate the termination.

## DISCUSSION

Judicial review of arbitral awards "is among the narrowest known to the law." *Champion Boxed Beef v. Local No. 7*, 24 F.3d 86, 87 (10th Cir. 1994). "The arbitrator's factual findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract." *Id.* "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

An arbitration award, however, must be vacated or modified if the arbitrator exceeded his or her authority:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). An arbitrator may also exceed his or her authority by deciding issues not mutually submitted by the parties. *See United Food and Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 946 (10th Cir. 1989) (the scope of the issues submitted to the arbitrator controls the arbitrator's authority); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir. 1980)

(arbitrator can bind the parties only on issues that they have agreed to submit to arbitrator).

Sandia contends that the arbitrator exceeded his authority 1) by reinstating Urquidez after determining that there was just cause for her termination and 2) by deciding issues not mutually submitted by the parties.

A.      Arbitrator's Authority to Reinstate Urquidez

The issue submitted by the parties to the arbitrator was:

> Was the Grievant, Renee Urquidez, terminated for just cause pursuant to the provisions of the Labor Agreement?  If not, what is the appropriate remedy?

Just cause is not defined in the CBA or in the stipulated issue submitted to the arbitrator for resolution.  Thus, the arbitrator was assigned the task of determining both what constitutes just cause and if just cause existed to terminate Urquidez.  *See, e.g., First Nat'l Supermarkets v. Retail Employees Local 338*, 118 F.3d 892, 896 (2d Cir.1997) (it is arbitrator's responsibility to interpret just cause when the CBA does not otherwise define the term).  "Just cause is a flexible concept, embodying notions of equity and fairness, and is certainly open to interpretation by the arbitrator." *Arch of Illinois v. District 12, United Mine Workers*, 85 F.3d 1289, 1294 (7th Cir. 1996).

Drawing upon principles of industrial justice, the arbitrator formulated the following standard for determining what constitutes just cause:

> Just cause imposes on Management the burden of showing by clear and convincing evidence that (a) the standard being imposed is reasonable and is a generally accepted employment standard that has been properly communicated to the Employee; that (b) the evidence proves that the Employee engaged in the misconduct which violated the standard; and that (c) the discipline assessed is appropriate for the offense under the just cause doctrine after considering any mitigating or extenuating circumstances.

Sandia does not challenge the arbitrator's authority to formulate a just cause standard that includes consideration of mitigating or extenuating circumstances, like the process used to terminate an employee, to determine if just cause for a termination exists.[1] *See, e.g., E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Assoc. of East Chicago, Inc.*, 790 F.2d 611, 614-615 (7th Cir. 1986) (finding that arbitrator could consider notions of fault and procedures afforded to grievant in determining just cause). Sandia contends, however, that the arbitrator did not decide the case in accordance with the just cause test he established but, rather, first determined that Sandia had just cause to terminate Urquidez and then considered the process resulting in her termination to ameliorate his finding of just cause. According to Sandia, the arbitrator, having concluded that Urquidez was terminated for just cause, was divested of jurisdiction and could not mitigate the penalty because the stipulated issue before him only allowed him to rule on the appropriate remedy if he did not find the termination was for just cause. *See, e.g., E.I. DuPont de Nemours and Co. v. Local 900*, 968 F.2d 456 (5th Cir. 1989) (arbitrator improperly fashioned an alternative remedy after finding just cause existed); *Butterkrust Bakeries v. Bakery, Confectionary & Tobacco Wkrs.*, 726 F.2d 698 (11th Cir. 1984)

---

[1] In its Reply brief, Sandia states:

Sandia does not argue, as the [Union] suggests, that the arbitrator was prohibited from considering the totality of the termination process or making generalized due process considerations as part of his determination on whether "just cause" existed for Urquidez's discharge. Had he actually employed such an analysis, a conclusion that Urquidez's due process rights had been violated would necessarily have resulted in a finding that Sandia did not have "just cause" to terminate. Under the issue jointly submitted to him for resolution, he would then have been allowed to fashion an appropriate remedy, including reinstatement without back pay, since the parties asked him to fashion a remedy if, and only if, he did <u>not</u> find just cause.

(emphasis in original).

(arbitrator found just cause to terminate the employee and therefore had no authority to alter the

remedy).  The question before the Court, therefore, is whether the arbitrator considered Sandia's

violation of Urquidez's due process rights as a factor in his just cause determination or whether

the arbitrator first found there was just cause for the termination and then used the due process

violation to mitigate the punishment.

> The arbitrator begins his analysis with a summary of his findings and award:

> It is the finding of the Impartial Arbitrator after carefully reviewing and weighing
> the oral and documentary evidence . . . that the disciplinary action (termination)
> assessed the Grievant does meet the just cause standard for industrial capital
> punishment, under the circumstances, but is ameliorated by Management's failure
> to properly accord the Grievant due process.

The arbitrator's own characterization of his finding supports Sandia's position that the arbitrator

found that there was just cause for the termination but mitigated the punishment based on his

determination that Sandia failed to accord Urquidez proper due process.

The next seven pages of the opinion are devoted to explaining the rationale and reasoning

behind the arbitrator's decision.  In this section, the arbitrator set out his three-prong just cause

standard (which includes consideration of due process factors to determine if just cause existed

for the termination) and applied each of the three prongs to the facts of this case.  The arbitrator

found that Sandia had sustained its burden of proof on the first two prongs--*i.e.*, the standard

being imposed by Sandia was reasonable, a generally accepted employment standard, and was

properly communicated to Urquidez and Urquidez engaged in misconduct which violated this

standard.

In his analysis under the second prong, the arbitrator stated that "I am persuaded that the

Employer has, indeed, sustained its burden of proof.  Renee Urquidez was terminated for the

7

Contractually prescribed 'just cause,' although Management's culpability was a mitigating circumstance."  This sentence suggests, again, that the arbitrator determined that just cause existed for the termination and then mitigated the punishment.  The concluding sentence in the arbitrator's analysis of the second prong, however, clarifies that the arbitrator only found that the second prong of the just cause standard had been satisfied:  "The answer to this question [did Urquidez engage in conduct which violated the standard] *in the just cause formula* must be in the affirmative."  (emphasis added).

The arbitrator then turned to the third prong--whether the discipline assessed was appropriate for the offense considering any mitigating or extenuating circumstances.  The arbitrator determined that the process by which an employee is terminated is properly considered a mitigating circumstance under the third prong of his just cause standard.  Evaluating the process by which Urquidez was terminated required the arbitrator to consider the issues related to Urquidez's termination that had been the subject of separate charges filed with the NLRB--the use of electronic time recording devices, the lack of Union representation at the weekly meetings between Wenk and Urquidez, and the lack of Union representation at the June 14, 2000 disciplinary meeting.  The arbitrator found that the first two issues did not constitute due process violations.  The arbitrator found, however, that holding the June 14, 2000 disciplinary meeting without the presence of a Union representative constituted a violation of Urquidez's due process rights.  Because there was a nexus between Urquidez's termination and the June 14, 2000 disciplinary hearing, the arbitrator vacated the disciplinary warning given at the June 14, 2000 meeting and reinstated Urquidez to her former job without back pay.

Although two sentences in the arbitrator's decision support Sandia's position, including,

significantly, the arbitrator's own summary of his finding, the overall structure of the opinion as well as the analysis performed suggest that the arbitrator applied the just cause standard he said he was going to apply and determined that while Urquidez's deficient job performance provided grounds for termination, the just cause standard was not satisfied because Sandia violated Urquidez's due process rights by holding the June 14, 2000 disciplinary meeting without a Union representative present.  In determining whether an arbitrator has exceeded his authority, all doubts must be resolved in favor of the arbitrator's authority.  *See, e.g., Resilient Floor and Decorative Covering Workers, Local Union 1179 v. Welco Mfg. Co*., 542 F.2d 1029, 1032 (8th Cir.1976). While it is an exceptionally close call, because the arbitrator arguably applied the just cause standard he set forth, which included consideration of due process factors as part of the determination of the existence of just cause, the arbitration award must be upheld.  *See, e.g., Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 184 (7th Cir. 1985) ("It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to 'draw its essence from the collective bargaining agreement.'") (emphasis added); *Arch of Illinois,* 85 F.3d at 1293 ("[B]efore we reject an award because of language in the arbitrator's opinion, the opinion must unambiguously reflect that the arbitrator based his decision on noncontractual grounds.").

B.    Arbitrator's Authority to Consider Issues That Were the Subject of Separate NLRB Charges

Sandia asserts that the arbitrator exceeded his jurisdiction by considering matters that were not submitted for resolution--the issues arising from Urquidez's termination that were the subject of other NLRB complaints.  Article 8 of the CBA states that "[e]ach referral to arbitration

shall embrace but one such matter in dispute."

Sandia contends that the matters that were the subject of the other NLRB charges were not reviewed as a due process element of the just cause determination but were improperly considered as mitigating factors for the penalty after just cause was found.  As discussed above, the Court has found that the arbitrator considered due process factors as part of his just cause determination.  In fact, the arbitrator explicitly stated that he was only considering the issues underlying the separate NLRB charges to the extent that they were relevant to whether Urquidez was terminated for just cause:  "[A]s an analysis of this case unfolds, the Arbitrator must consider the Union's allegation that in these three instances Ms. Urquidez's rights were not served and protected <u>as they relate to the just cause doctrine</u>."  (emphasis in original). The only remaining question therefore is whether the arbitrator properly determined that these issues were relevant to the just cause determination.

As discussed above, the just cause standard used by the arbitrator incorporated procedural due process protections.  *See, e.g., First National Supermarkets*, 118 F.3d  at 896 (arbitrator entitled to consider extenuating circumstances in determining whether employee was discharged for "just cause").  Therefore, the process utilized by Sandia to terminate Urquidez was relevant to the just cause determination as framed by the arbitrator.  An arbitrator is not barred from considering information relevant to the issue before him simply because that information may be the subject of other complaints or grievances. *See, e.g., Butterkrust Bakeries*, 726 F.2d at 699-700 (arbitrator may consider employee's entire disciplinary history in evaluating whether there was just cause for discharge).

The just cause standard established by the arbitrator incorporated the consideration of

extenuating and mitigating factors, including due process protections.  The three issues that

formed the basis of separate complaints to the NLRB were relevant to the determination of

whether Urquidez was afforded due process and were properly considered as part of the

arbitrator's just cause analysis.

        C.        Alleged Errors in Legal Analysis

Sandia also argues that under applicable law, a Union representative was not required to

be present at the June 14, 2000 meeting and therefore the arbitrator's finding that the lack of a

representative constituted a violation of due process was erroneous.  This Court, however, is

determining whether the arbitrator acted within his jurisdiction.  Whether the arbitrator made

errors in his analysis is irrelevant to the jurisdictional question.  *See Lackawanna Leather Co. v.*

*UFCW*, 706 F.2d 228, 230 (8th Cir. 1983) ("Whether the arbitrator erred in reaching a particular

result is irrelevant to the determination of whether the arbitrator acted within his jurisdiction").

Furthermore,  "[e]rrors in either the arbitrator's factual findings or his interpretation of law

(unless that interpretation shows a manifest disregard of controlling law) do not justify review or

reversal on the merits of the controversy."  *Denver & Rio Grande Western Railroad Co. v. Union*

*Pacific Railroad Co*., 119 F.3d 847, 849 (10th Cir. 1997), citing *Misco*, 484 U.S. at 36-38.

The issue submitted to the arbitrator for resolution required the arbitrator to determine

what constituted just cause.  The just cause standard formulated by the arbitrator required the

arbitrator to consider whether circumstances existed to mitigate a termination for cause.

Considering mitigating circumstances in determining whether a termination is for just cause is

within the scope of the arbitrator's authority under the CBA and the stipulated issue presented to

the arbitrator.  Because the arbitrator arguably applied the just cause test he established and

determined that just cause did not exist for Urquidez' termination, the Court finds that he acted

within the scope of his authority and his award drew its essence from the CBA.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Vacate Arbitration Award,

filed July 15, 2002, **[Doc. No. 18]** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Respondent's Counterclaim to Confirm and Enforce

Arbitrator's Award, filed July 29, 2002, **[Doc. No. 20]** is hereby **GRANTED**.  The parties shall

bear their own fees and costs.

Dated this 1st day of June, 2004.

MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE


Attorney for Petitioner:
    Ryan M. Randall, Esq.

Attorney for Respondent:
    Angela Cornell, Esq.